UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ANTHONY RENARD MOORE,

       Plaintiff,

v.                                                       CASE No. 8:12-CV-906-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

       The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, the decision will be affirmed.

_____

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was forty-five years old at the time of the administrative hearing and who has the equivalent of a high school education, has worked as a plate glass installer and construction worker (Tr. 28, 37). He filed a claim for Social Security disability benefits, alleging he became disabled due to a stroke, aneurysm, and high blood pressure (Tr. 181). His claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "chronic renal insufficiency, status post cerebrovascular accident (CVA) with s[h]unt placement, hypertension, vocal cord paralysis, sleep apnea, depression, organic amnesic disorder and history of drug addiction and alcoholism (DAA)" (Tr. 11). She concluded that, with these impairments, the plaintiff has the residual functional capacity to perform light work (Tr. 13). She added (Tr. 14):

> Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; he is able to walk for six hours total in an eight hour workday; the claimant is able to sit for one hour at a time and stand for fifteen minutes at a

> time, alternating between sitting and standing as
> needed; he must never climb ladders, ropes and
> scaffolds; the claimant is able to occasionally climb
> ramps and stairs, balance, stoop, kneel, crouch and
> crawl; he can perform occasional overhead
> reaching using the right upper extremity and
> frequent but not constant handling with the right
> upper extremity; the claimant must avoid
> concentrated exposure to cold, heat, humidity,
> noise, vibrations, fumes, odors, gases and hazards;
> he is able to perform simple work with occasional
> interaction with the public and jobs requiring only
> occasional speaking.

The law judge ruled that these limitations prevented the plaintiff from

returning to any past relevant work (Tr. 16). However, the law judge found,

based upon testimony from a vocational expert, that other jobs exist in

significant numbers in the national economy that the plaintiff could perform,

such as the light work jobs of shipping/receiving waiter,[3] parking lot

attendant and assembler, and the sedentary jobs of hand assembler, sorter and

inspector (Tr. 17). Accordingly, the law judge ruled that the plaintiff was not

disabled through the date of the decision (Tr. 18). The Appeals Council let

the decision of the law judge stand as the final decision of the Commissioner.

---

[3]The transcript indicated that this job was a shipping/receiving weigher, which
sounds more reasonable (Tr. 39). See DOT 222.387-074, 1991 WL 672108.

II.

A.  In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies … may be reversed … only when the record compels a reversal; the mere fact that the record may support a contrary

-4-

conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c).

When an impairment is severe, the next inquiry is whether the impairment meets, or equals, a listing in Appendix 1 (step three). 20 C.F.R. 404.1520(d). If it does not, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g).

III.

The plaintiff had a stroke in March 2008, after which a consulting physician stated the plaintiff had "made a remarkable recovery" (Tr. 258). The law judge found that the plaintiff had some residual effects from the stroke, as well as other ailments, and limited the plaintiff to a restricted range of simple, light work. The plaintiff contends that the law judge erred by failing to find that the plaintiff met, or equaled, listing 12.02 for an organic mental disorder or listing 11.04 for central nervous system vascular accident (Doc. 16). The plaintiff's contentions are meritless because he has not presented medical evidence which establishes that he meets, or equals, either listing.

A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. 20 C.F.R. Part 404, Subpart P, Appendix 1; Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990)("The listings define impairments that would prevent an adult ... from performing any gainful activity, not just substantial gainful activity."). The plaintiff bears the burden

of showing that he meets, or equals, a listing. <u>McSwain</u> v. <u>Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." <u>Bell</u> v. <u>Bowen</u>, 796 F.2d 1350, 1353 (11th Cir. 1986); <u>Wilkinson o/b/o Wilkinson</u> v. <u>Bowen</u>, <u>supra</u>, 847 F.2d at 662.

The law judge specifically considered listing 12.02 for organic mental disorders and listing 11.04 for central nervous system vascular accidents (Tr. 12). However, the law judge found that the plaintiff did not meet, or equal, either of these listings (<u>id</u>.). In this regard, the law judge stated that she reviewed the medical evidence of record and noted (correctly) that "no physician or acceptable medical source has opined that the claimant's impairments meet or equal ... any ... listing in Appendix 1" (<u>id</u>.).

The plaintiff contends first that he meets the requirements of

listing 12.02 of Appendix 1 (Doc. 16, pp. 10-15).  That listing states:

> 12.02 *Organic Mental Disorders*:  Psychological
> or behavioral abnormalities associated with a
> dysfunction of the brain.  History and physical
> examination or laboratory tests demonstrate the
> presence of a specific organic factor judged to be
> etiologically related to the abnormal mental state
> and loss of previously acquired functional abilities.
>      The required level of severity for this
> disorder is met when the requirements in both A
> and B are satisfied, or when the requirements in C
> are satisfied.
>      A.  Demonstration of a loss of specific
> cognitive abilities or affective changes and the
> medically documented persistence of at least one of
> the following:
>      1. Disorientation to time and place; or
>      2. Memory impairment, either short-term
> (inability to learn new information), intermediate
> or long-term (inability to remember information
> that was known sometime in the past) ....
>
> AND
>      B.  Resulting in at least two of the following:
>      1. Marked restriction of activities of daily
> living; or
>      2. Marked difficulties in maintaining social
> functioning; or
>      3. Marked difficulties in maintaining con-
> centration, persistence or pace; or

> 4. Repeated episodes of decompensation, each of extended duration.
>
> ....

The plaintiff argues that he meets the requirements of sections A and B (Doc. 16, p. 11).[4]  Specifically, the plaintiff asserts that he satisfies paragraph A.2. because he has severe memory impairments due to his stroke (id., p.12).  The Commissioner does not assert a challenge to the plaintiff's claim that he has satisfied paragraph A (see Doc. 17, p. 13)

However, as the plaintiff acknowledges, in order to satisfy this listing, he also must meet the requirements of paragraph B (Doc. 16, p. 12). The plaintiff clearly has not made that showing.

The law judge considered whether the plaintiff met the "paragraph B criteria" for listing 12.02, which requires marked restrictions "in at least two" of the four identified mental functional areas (Tr. 13). However, the law judge did not find that the plaintiff had marked limitations in any of these functional areas. Rather, she found no restrictions in activities

---

[4] As indicated, listing 12.02 may also be met by satisfying the requirements of paragraph C. 20 C.F.R. Part 404, Subpart P, App. 1, 12.02. The law judge found that the plaintiff did not satisfy the "paragraph C" requirements (Tr. 13), and the plaintiff does not contend otherwise (see Doc. 16, p. 11).

of daily living, only mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation of extended duration (Tr. 13). Accordingly, the law judge found that the plaintiff did not meet the "paragraph B" criteria (id.).

This finding is supported by the opinions of Dr. Martha Putney and Dr. James Levasseur, two nonexamining reviewing psychologists, who are the only medical sources to opine on the plaintiff's mental functional capacity. Thus, the Psychiatric Review Technique form called for Dr. Putney and Dr. Levasseur to indicate if the criteria of listing 12.02 were met (Tr. 304, 359). Neither psychologist concluded that the criteria were satisfied (id.). Furthermore, neither psychologist opined that the plaintiff had marked limitations in even one of the four functional areas needed to satisfy the paragraph B criteria (Tr. 314, 369).

The plaintiff argues that the law judge should have found that he had marked restrictions in activities of daily living and in maintaining concentration, persistence or pace (Doc. 16, p. 12). The plaintiff, however, has not set forth any medical findings which demonstrate marked limitations in either area (see id., pp. 13-15). Thus, he has failed to meet the demanding

requirements to establish a listing at step three. This failure, alone, defeats the plaintiff's contention regarding listing 12.02.

Moreover, the law judge cogently explained why he found that the plaintiff had no mental restrictions in the activities of daily living. Thus, he stated that the plaintiff has "reported that he takes care of his personal hygiene, helps in the kitchen, takes care of his one year old daughter, shops for groceries and uses public transportation" (Tr. 13). Accordingly, Dr. Levasseur opined that the plaintiff has only mild restrictions in activities of daily living (Tr. 314), and Dr. Putney opined that the plaintiff has no restriction in his activities of daily living (Tr. 369).

The plaintiff contends his hearing testimony that he sleeps most of the day and performs almost no activities around the house shows that he has serious difficulties performing his activities of daily living in a normal manner (Doc. 16, pp. 13, 14). This contention is unavailing. In the first place, the law judge did not find the plaintiff's testimony fully credible (Tr. 14, 15). Significantly, the plaintiff has not challenged the law judge's credibility determination. In light of the scheduling Order, the plaintiff has forfeited any challenge to the credibility determination (Doc. 13, p. 2).

Furthermore, the plaintiff's testimony alone would not be sufficient to meet the exacting requirements of the listing. As indicated, the plaintiff, in order to meet a listing, must point to specific medical findings. Bell v. Bowen, supra, 796 F.2d at 1353; Wilkinson o/b/o Wilkinson, supra, 847 F.2d at 662.

The absence of any supporting medical findings is underscored by the plaintiff being relegated to relying on the observations of Social Security representative D. Bennett, who interviewed the plaintiff on March 27, 2008 (Doc. 16, pp. 13-14; see Tr. 178-79). His observations, however, do not amount to specific medical findings. The Eleventh Circuit has noted that the opinion of a single decision maker is not entitled to any weight, so that, a fortiori, neither are the observations of an initial interviewer. See Cooper v. Commissioner of Social Security, ___ Fed. Appx. ___, 2013 WL 2451030 at *3 (11th Cir.). Furthermore, because Bennett interviewed the plaintiff on March 27, 2008 (Tr. 178-79), only days after the plaintiff was released from the hospital following his stroke, the plaintiff's condition on that date was not indicative of his long-term functioning.

In sum, the plaintiff clearly failed to meet his burden of presenting evidence which compels a finding that he had marked limitations in performing activities of daily living. See Adefemi v. Ashcroft, supra; McSwain v. Bowen, supra. Consequently, since the plaintiff did not show he was markedly limited in activities of daily living, and he alleged marked limitations in only one other area, the plaintiff cannot satisfy the paragraph B requirement of marked limitations "in at least two" of the functional areas.

Nonetheless, it is noted that the plaintiff has also failed to identify evidence which compelled the law judge to find that he had marked difficulties in maintaining concentration, persistence or pace. The law judge found that the plaintiff had moderate limitations in concentration, persistence or pace (Tr. 13). This finding is supported by the opinions of Dr. Levasseur and Dr. Putney, both of whom came to that conclusion (Tr. 314, 369). On the other hand, there is no medical finding of a marked limitation in concentration, persistence or pace.

Therefore, the plaintiff has also failed to show that he has a marked limitation in concentration, persistence, or pace. This failure provides

an additional reason why the plaintiff does not meet the paragraph B requirements of listing 12.02.

B. The plaintiff also argues that the law judge erred in finding that he did not meet listing 11.04 A (Doc. 16, pp. 16-18). That listing states:

> 11.04. *Central nervous system vascular accident.* With one of the following more than 3 months post-vascular accident:
> A. Sensory or motor aphasia resulting in ineffective speech or communication ...

The plaintiff has not identified any specific medical findings which meet the criteria, or pointed to any evidence which describes how an equivalency has been established. Thus, no treating or examining doctor has opined that the plaintiff has "[s]ensory or motor aphasia resulting in ineffective speech or communication." Further, nonexamining reviewing physician, Dr. Thomas Renny, found that the plaintiff has no communication limitations, including speaking (Tr. 377).

In addition, a number of doctors commented that the plaintiff's speech was essentially normal. Thus, consultative examiner Thomas G. Trimmer, Ph.D., observed that the plaintiff's speech, although slightly hesitant, was generally normal (Tr. 150). Consultative examiner Dr. Robert

B. Burchett also noted that the plaintiff's "speech is normal" (Tr. 291). In addition, shortly after the plaintiff's stroke, Dr. Lori Wagner noted on May 6, 2008, the plaintiff exhibited only "mildly impaired speech" (Tr. 273-75). Moreover, in July 2009, Dr. Juan Fernandez-Maceiro noted that, although the plaintiff's voice was deep, his speech was clear (Tr. 511, 515). Further, when Dr. Alonso Osorio examined the plaintiff in November 2009, he observed that the plaintiff had a "deep voice with normal speech," no dysarthrya, no dysphagia, intact cranial nerves, and no focal neuro deficits (Tr. 438-40). Similarly, Dr. Amanollah Tabesh, an ear, nose and throat specialist, noted the plaintiff had a hoarse voice and diagnosed vocal cord paralysis, but observed no dysphasia or dysphonia (Tr. 519, 520, 521).[5]

In sum, there is ample evidence showing that, despite the plaintiff's vocal cord impairment, the plaintiff is able to communicate effectively. Of course, it is the plaintiff's burden to point to specific medical findings stating that he has sensory or motor aphasia resulting in ineffective

---

[5]Dysarthia, dysphasia, and dysphonia all relate to difficulties in speech. Dysarthia is difficulty in articulating words, dysphasia is loss or deficiency in power to use or understand language, and dysphonia is the impairment of the voice, manifested by hoarseness or other defects of phonation. *Webster's Third New International Dictionary* (Unb., 1981), pp. 711, 712.

speech or communication.  The plaintiff clearly has not made that showing.

Therefore, the plaintiff has failed to satisfy the requirements of listing 11.04

A.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED.

The Clerk shall enter judgment in accordance with this Order and CLOSE the

case.

DONE and ORDERED at Tampa, Florida, this 2𝟺ᵗʰ day of July,

2013.

_____
THOMAS  G.  WILSON
UNITED  STATES  MAGISTRATE  JUDGE